**PACIFIC GAMBLE ROBINSON CO., a**
Delaware corporation, Plaintiff,

v.

The **MINNEAPOLIS & ST. LOUIS RAIL-WAY COMPANY**, a Minnesota corporation, Defendant.

Civ. No. 3004.

United States District Court
D. Minnesota, Fourth Division.

Sept. 14, 1955.

Perry R. Moore and Floyd E. Nelson, Mackall, Crounse, Moore, Helmey & Palmer, Minneapolis, Minn., for plaintiff.

Richard Musenbrock, Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

This cause comes before the Court on the question of damages, interest, and attorneys' fees to be allowed plaintiff in light of the evidence offered by the parties and in conformity with the decision of the United States Court of Appeals, 8 Cir., 215 F.2d 126.

■ The damages to be allowed plaintiff must be limited to the articles of perishables and groceries which would have been loaded in the 8 cars properly ordered as of March 30, 1949, and the 2 cars as of April 30, 1949. Plaintiff now takes the position that, by its proof, all of the perishables and all of the groceries which were subject to deterioration or market decline would have been loaded in these 10 cars, so that its damages are substantially the same as they were at the former trial. When the defendant peremptorily moved out the 8 empty cars from plaintiff's Fifth Street Warehouse track on March 30th in acquiescence to the demands of the striking Union, plaintiff contends that it recognized at that time that there was an emergency which confronted it as to the merchandise in the warehouse and that its three key men, Holmes, Swaney, and Hagen, had determined on that very day that, as soon as cars were available, they would load all of the perishables and the grocery items subject to deterioration and price decline, and ship the cars to certain branch houses of plaintiff. In support of plaintiff's position in this regard, Holmes, who was traffic manager, states that he talked to Mr. Devins, then General Superintendent of defendant, on March 30, 1949, protesting the removal of the 8 cars, and on that day, plaintiff's Exhibit JJ was made out by Holmes, which consists of certain notations indicating the destination of the 8 cars if Devins responded to his request that they be returned. Reference is also made to plaintiff's Exhibit A–1, which is a letter under date of March 30, 1949, demanding the return of the 8 empty cars. Plaintiff's position is, therefore, that the situation became critical as of March 30th and that Holmes, Swaney, and Hagen knew that the situation was critical, and urges to the Court that it is that state of mind, with the knowledge of the situation confronting plaintiff, which must be considered in determining what would have been loaded in the 8 cars on March 30th and what would have been loaded in the 2 cars in response to the April 30th order. Now, obviously, in assuming to determine in 1955 what these men would have done in 1949 in removing the perishables and groceries from the warehouse if cars had been available, the Court must consider the reasonable probabilities in light of all the evidence. Holmes, Swaney, and Hagen

have the same positions today which they had in 1949—Hagen in charge of the perishables, Swaney in charge of the groceries, and Holmes in charge of traffic. It is these men who have testified as to what would have been loaded in the 10 cars if they had been made available. There is no evidence to the contrary.

That plaintiff sustained damage because of the failure of defendant to comply with its statutory duty is too clear for any serious contention to the contrary. That plaintiff was aware on March 30, 1949, that it was confronted with a substantial loss on some of its merchandise if the same was not moved immediately to one or more of its branches is likewise apparent. In this connection, it must be remembered that the 8 cars which were ordered to be returned on March 30th were not to be utilized for routine shipments in filling orders from customers or branches. The only purpose in obtaining the cars was to load them with merchandise and ship the cars to various branches of plaintiff so as to prevent a mounting loss in warehouse merchandise which had been occasioned by plaintiff's inability to move the merchandise for disposition. Consequently, when the defendant refused to return the cars or furnish other cars in response to the letter of March 30th, there cannot be any doubt that plaintiff was aware that it was confronted with a very serious and critical situation. No one questions that plaintiff sustained a net loss of $18,500.06 in perishables. And moreover, the evidence is persuasive that, if cars had been furnished, these perishables would have been loaded in the 8 cars and shipped to various branches of plaintiff and the loss obviated. This analysis of the realities of the situation which confronted plaintiff on March 30th is not sheer speculation or guesswork, as the defendant suggests, and such action would not have required omniscience on the part of these men, but merely the exercise of common sense in view of the dilemma which confronted plaintiff. True, plaintiff was required to sustain the burden of proof, not only that the perishables could have been loaded in the cars indicated by the evidence, but also that the perishables would have been loaded therein if the cars had been made available. But if plaintiff is required to resort to opinion evidence in this regard, defendant must recognize that its failure to fulfill its statutory duty permits no other type of evidence. When it is recognized that loss undoubtedly was sustained by plaintiff as the direct result of defendant's wrongdoing, the amount of loss may be determined by the best evidence available.

Defendant urges, however, that at the former trial it was plaintiff's position that the contents of the warehouse could have been loaded in 20 cars and that the trial proceeded upon the theory that that number of cars would be required. However, there was no issue at the last trial as to the number of cars that would be required to empty the warehouse, in that it was assumed that 20 cars had been properly ordered and everyone recognized that that number of cars could have contained all of the merchandise—groceries and perishables—in the warehouse. The question as to what the plaintiff would have done on March 30th in view of defendant's action in moving out the 8 empty cars was not then before the Court. The Court merely proceeded upon the theory that plaintiff had lawfully ordered 20 cars and that number would have been sufficient to contain all the warehouse merchandise removed under normal conditions. However, with a strike-bound warehouse confronting plaintiff on March 30th, and with the defendant refusing to make available to plaintiff any cars, it is abundantly clear from the present evidence that the entire warehouse of perishables could have been loaded into the 8 cars. Experienced merchandise men in the grocery and perishables line would have taken no other action. The Court is clear, therefore, that plaintiff has sustained the burden of proof as to the loss on its perishables di-

rectly resulting from defendant's failure to fulfill its statutory duty and that such loss amounted to $18,500.06.

A more difficult question arises as to the type and kind of grocery items which would have been loaded with the perishables on March 30th and what items of groceries would have been loaded in the 2 cars in response to the order of April 30th. Plaintiff's witness, Swaney, testified that, in selecting the grocery items for shipment, he would have proceeded to select first those subject to deterioration, and second, those which were subject to price decline. Having concluded that all of the perishables would have found space in the 8 cars, with available space for some groceries, the question arises as to what type of groceries in all probability would have been loaded. At the outset, it seems clear that plaintiff would have recognized the potential deterioration existing in certain grocery items and that these items would first be removed. The men in charge of the grocery department certainly would be apprehensive about the items of groceries which were subject to deterioration, such as dried fruits, nuts, marshmallows, cheese, salad dressing, etc. The proof indicates that on account of plaintiff's failure to get cars on the dates indicated, it sustained a loss on certain grocery items to the extent of $1,550.79. The evidence is equally as impelling that such groceries subject to deterioration would have been loaded in the 10 cars if available just as the perishables would have been loaded.

■ There were some 1,000 grocery items on hand in the warehouse. The evidence establishes that plaintiff sustained a net loss on certain groceries because of market decline by reason of the fact that these groceries were not moved on March 30th and April 30th and that, by reason of plaintiff's inability to place them on the market for sale, it sustained a loss up to June 19, 1949, in the sum of $2,883.46. It contends that it would have selected for shipment on the dates in question some 158 items of groceries out of the entire stock and on which items there later proved to be a market decline. The Court has not much doubt that plaintiff's employees were sufficiently experienced in the grocery business to have knowledge of the grocery market and as to items in its warehouse which might be subject to a market decline. No doubt there are certain canned goods that decline in market price when the new fresh canned stock is available. But if one is to be realistic about the probabilities of perishables and grocery items subject to deterioration being loaded, one must likewise be realistic about the probabilities of plaintiff's having the acumen to select for shipment those particular 158 items out of the some 1,000 items in the warehouse. The loading of these 10 cars would have to be done by the office force at the warehouse. It is hardly probable, in light of the shortage of man power, that they would have taken upon themselves any other duty than to load out the perishables and the deteriorating grocery items for shipment to the branches. In other words, the deteriorating and spoiling merchandise would have been the predominant and motivating factor in determining what would go out in the 10 cars. To assume that they would have the perspicacity to have pinpointed the 158 items out of the entire stock of merchandise taxes one's credulity. True, some of them might have been selected, but to determine which ones would require this Court to select blindly certain items. At least, the Court is not satisfied that plaintiff has sustained the burden of proof in this regard. The damages, therefore, must be limited to the loss on the perishables and grocery items which deteriorated, totaling the sum of $20,050.85.

■■ The Court heretofore has held that plaintiff was entitled to interest on the amount of damages sustained. In that the Court of Appeals remanded the case for determination of the award of damages, together with such interest and attorneys' fees as the Court may deem proper, it is to be presumed that the Ap-

pellate Court approved the exercise of the Court's discretion in regard to the allowance of interest. Reference is now made, however, to the fact that defendant took an appeal and was successful, at least to the extent that the Court was required to appraise the amount of damages in light of the Appellate Court's decision and the proof furnished at the retrial. However, if the Court's decision had been entirely sustained, there would be no suggestion that there should be any tolling of the period that interest should run. The remanding of the case for a reconsideration of the question of damages does not suggest that plaintiff should have anything less than full compensation for the loss which the Court determines on the remand. In that the Court now has determined that plaintiff was damaged by defendant's wrong in the sum of $20,050.85, it must necessarily follow that that compensation will require the allowance of interest just as persuasively as the allowance of interest on the earlier award. That is, the loss which the Court now has ultimately determined that plaintiff sustained in no less measure dates from June 19, 1949, and if the Court's discretion in the first trial was sound as to the allowance of interest, it is also sound in recognizing that plaintiff is entitled to interest on this new award. And as the Court stated in its memorandum of June 25, 1952,

"The risk of interest should be upon the one who wrongfully fails to perform its duty, not upon the shipper who has the right to demand the performance of the duty imposed by law."

The Court's view is, therefore, that plaintiff is entitled to interest at the rate of 6 per cent on the damages allowed herein from June 19, 1949.

 The Court heretofore had allowed $5,000 as attorneys' fees, and plaintiff now urges an additional allowance of some $14,000 largely incurred since and because of the appeal. The hourly rate charged for the services is $15 per hour. No one questions the reasonableness of the hourly rate, but defendant urges that the amount requested as additional attorneys' fees is highly exorbitant. The Court has advised counsel heretofore that it does not construe the Court of Appeals' opinion as an affirmance of the $5,000 attorneys' fees so that that allowance is res judicata. In other words, the question of the amount of attorneys' fees as well as interest must be determined anew by the Court in light of all the circumstances which are now made to appear. As has so often been stated, the allowance of attorneys' fees is a matter which is not only a difficult problem, but a delicate one. Defendant's appeal here was partially successful, but notwithstanding the remand on the question of damages, the Court has finally allowed a substantial recovery. Plaintiff was required to meet the appeal and was sustained as to the primary and controlling question of liability. The issues on appeal presented novel questions of more than usual public interest. Certainly, plaintiff is entitled to a reasonable allowance for the long and protracted services which its counsel was required to render in connection with this litigation, including the appeal and retrial of the issue of damages. After due reflection and consideration and in light of all the evidence, the Court concludes that an allowance of $8,500 as attorneys' fees in full from the beginning of this litigation to date is reasonable and consonant with the purposes of the statute.

Findings of fact and conclusions of law consistent herewith may be presented by plaintiff upon ten days' notice. An exception is reserved.